UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jose R.M.M., <br><br>　　　　Petitioner, <br><br>v. <br><br>Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; and Eric Klang, *Sheriff, Crow Wing County*, <br><br>　　　　Respondents. | Civ. No. 26-1153 (JWB/ECW) <br><br><br><br>**ORDER ON <br>AMENDED PETITION FOR <br>WRIT OF HABEAS CORPUS** |

Liliana Zaragoza, Esq., University of Minnesota Law School Racial Justice Law Clinic, counsel for Petitioner.

David W. Fuller, Esq., and David R. Hackworthy, Esq., United States Attorney's Office, counsel for federal Respondents.

　　　　This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) after previously releasing him from custody and placing him in removal proceedings under 8 U.S.C. § 1229. The answer is no. Because Respondents previously exercised authority to release Petitioner Jose R.M.M. into the United States, and he was later arrested inside the country, § 1226—not § 1225—governs detention while removal proceedings remain pending.

　　　　Respondents' position that § 1225 applies after a noncitizen has been released

from custody has been often rejected in this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Therefore, the petition is granted to the extent that it requests release.

## BACKGROUND

Petitioner is a citizen of Nicaragua. (*See* Doc. No. 9, Amended Petition ¶¶ 7, 13.) Petitioner alleges that he entered the United States in 2024 and presented himself for inspection at the border in El Paso, Texas. (*Id.*) Respondents state that Petitioner "unlawfully entered the United States near the Rio Grande Valley, Texas" on February 3, 2024, and that "DHS encountered and detained [him], determined he had entered unlawfully, and placed [him] into Expedited Removal Proceedings." (Doc. No. 11 at 2.)[1]

An asylum officer initially found Petitioner had no credible fear of returning to Nicaragua, but an Immigration Judge vacated that finding on March 3, 2024, and returned the matter to Respondents to commence removal proceedings. (*Id.*)

On April 4, 2024, Petitioner was issued a Notice to Appear charging him with inadmissibility under 8 U.S.C. §§ 1182(a)(7)A)(i)(I) and 1182(a)(6)(A)(i). (*Id.*) The

---

[1] The discrepancies between the parties' factual characterizations underscore the importance of submitting the underlying immigration records. Petitioner states he arrived in 2024, received an I-94 admission document, and was released with a court date. Respondents assert he underwent expedited removal procedures and was later issued a Notice to Appear. Most critically, Petitioner alleges he was released from custody in 2024, yet Respondents do not acknowledge or refute that allegation and have not submitted the custody or release documentation that would resolve the issue. In detention cases turning on statutory authority, those records are often dispositive.

2

standard Notice to Appear, Form I-862, places a noncitizen in removal proceedings pursuant to 8 U.S.C. § 1229a, which governs full removal proceedings before an Immigration Judge.

Petitioner was then released from custody. (Am. Petition ¶¶ 13, 45.) He lived in Kansas City briefly before relocating to Minneapolis. (*Id.* ¶ 13.) On January 26, 2026, ICE agents apprehended Petitioner in his home, allegedly without a warrant. (*Id.* ¶¶ 15, 33, 69.) He remains in custody at the Crow Wing County Jail. (*Id.* ¶¶ 7, 16.)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

### II. Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He

does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention. *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149.

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents assert that Petitioner is subject to mandatory detention under § 1225. They contend Petitioner's case is different from the "typical" immigration habeas matters recently filed in this District (*see* Doc. No. 11 at 1), but their answer does not adequately explain the difference. They do not clearly identify which provision in § 1225(b) purportedly authorized Petitioner's arrest in January 2026 and requires him to remain detained. They also fail to rebut or even address the critical allegation that Respondents released Petitioner from immigration custody in March 2024, which undermines the assertion that he was and remains subject to *mandatory* detention.

4

The answer also refers to expedited removal under § 1225(b)(1), which generally applies to noncitizens who are arriving to the United States and indicate an intention to apply for asylum or a fear of persecution. That section's detention provisions are not implicated here. Respondents' own account reflects that the negative credible fear determination was vacated and that DHS then issued a Notice to Appear. *See Julio C.P.M. v. Bondi*, Civ. No. 26-1268 (JWB/ECW), Doc. No. 9 at 4–9 (D. Minn. Feb. 20, 2026) (rejecting argument that § 1225(b)(1) authorizes mandatory detention for noncitizens arrested in the interior).

When an Immigration Judge vacates a negative credible fear determination and DHS issues a Notice to Appear, expedited removal ends and full removal proceedings begin. Nothing in the INA authorizes Respondents to continue invoking § 1225(b)(1) after initiating § 1229a proceedings. Once Respondents elected to proceed under § 1229a, § 1225(b)(1) ceased to supply mandatory detention authority.

Respondents ultimately argue that "[b]ecause Petitioner is 'seeking admission,' as someone encountered upon unlawfully entering and placed into removal proceedings, he is subject to mandatory detention." (Doc. No. 11 at 5.) The "seeking admission" phrase appears only in § 1225(b)(2)(A) and is central to the "typical" statutory interpretation dispute between Respondents and the many habeas petitioners who have been arrested on the interior of the country.

In the end, Respondents still assert that Petitioner is subject to § 1225(b)(2), which mandates detention of certain "applicants for admission" pending removal proceedings. The vast majority of district courts considering that assertion, including this Court, have

5

determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens released to the interior of the country like Petitioner. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q. v. Noem*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 (D. Minn. Dec. 19, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have previously cited to it as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See*

6

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688.

The analysis here is straightforward. Respondents encountered and detained Petitioner when he entered the country in 2024, placed him in expedited removal proceedings and conducted a credible fear interview, had their credible fear determination vacated, and then issued him a Notice to Appear and released him into the country. Respondents then allowed Petitioner to remain in the community for almost two years. Nothing in the record suggests Respondents ever revoked that release based on flight risk, danger, changed circumstances, or any other reason.

Section 1225(b)(2) provides no authority to revisit that custody determination later. And Petitioner's arrest on January 26, 2026 did not transform him into a noncitizen "seeking admission." When ICE detained Petitioner in Minnesota, he was in the interior of the country, not arriving at a port of entry. He was arrested while within the country and, thus, to the extent he is subject to detention, that detention would be pursuant to § 1226. Even so, there is no evidence in the record that Respondents properly invoked that authority to detain Petitioner here.

The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Nothing in § 1225 authorizes Respondents to revive mandatory detention just by recharacterizing a previously released noncitizen as an applicant for admission. *See, e.g.*, *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025). The statute contains no mechanism for that switch. Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Thus, he is entitled to a writ of habeas corpus that grants his immediate release. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes his continued detention, the Petition for Writ of Habeas Corpus is granted, and Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.        Petitioner Jose R.M.M.'s Amended Petition for Writ of Habeas Corpus (Doc. No. 9) is **GRANTED**.

2.        **Release**. Respondents shall immediately release Petitioner from custody. He must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiation of return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3. **Notice.** Respondents shall file an update on the status of Petitioner's release by 4:10 p.m. on February 27, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5. Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 25, 2026   *s/ Jerry W. Blackwell*
Time: 4:10 p.m.   JERRY W. BLACKWELL
   United States District Judge